IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NICK SOLOMON, JODI SOLOMON, and
ESTATE OF BEAU JORDAN SOLOMON,

                       Plaintiffs,

    v.

JOHN CABOT UNIVERSITY and
ACE AMERICAN INSURANCE COMPANY,

                       Defendants.

OPINION & ORDER

17-cv-621-jdp

---

      Beau Jordan Solomon, a University of Wisconsin student, was murdered in Rome, Italy, while attending a study abroad program at defendant John Cabot University (JCU). Beau's parents and his estate are now suing JCU and its insurer, defendant Ace American Insurance Company, for his wrongful death, alleging that JCU was negligent for failing to warn visiting students about criminal activities around the campus in Rome.

      JCU and Ace American Insurance Company move to dismiss the case, either for lack of personal jurisdiction or under the doctrine of forum non conveniens. In the alternative to dismissal, they ask to transfer the case to the United States District Court for the District of Delaware. Dkt. 23.

      The court concludes that (1) the exercise of specific personal jurisdiction is proper, because JCU actively recruited students in Wisconsin; (2) forum non conveniens dismissal is not warranted because any burden JCU would bear by being forced to litigate in Wisconsin would not outweigh the convenience to the Solomons of litigating in their home forum; and (3) any connection this case has to Delaware is far outweighed by its connection to Wisconsin. The court will deny defendants' motion.

BACKGROUND

In deciding a motion to dismiss on jurisdictional grounds, the court may consider well-pleaded allegations in the complaint, affidavits, and written materials. *Kipp v. Ski Enterprise Corp.*, 783 F.3d 695, 697 (7th Cir. 2015). And where the material facts are not disputed, the court can decide the issue on the written evidence alone, without an evidentiary hearing. *See Lexington Ins. Co. v. Zurich Ins. (Taiwan) Ltd.*, 286 F. Supp. 3d 982, 985 (W.D. Wis. 2017) (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Here, the court draws the following undisputed facts from the Solomons' amended complaint and the affidavits from the parties.

JCU is an American university, incorporated in Delaware, that operates a campus in Rome, Italy. JCU offers study abroad programs to American students. In 2011, JCU entered into a three-year "affiliation agreement" with the University of Wisconsin—Madison (UW) that recognized JCU as an "officially sponsored UW study abroad program." Dkt. 19-1, at 2. In 2014, JCU and the UW extended their relationship by signing a new three-year "program agreement" "for the purpose of providing a study abroad program" for UW students. Dkt. 19-2, at 1. This program agreement was in effect during all relevant times in this case.

In the fall of 2015, a JCU representative traveled to Wisconsin to recruit UW students at a study abroad fair. Beau attended the fair, met with the JCU representative, and ultimately registered to study abroad at JCU. The following March, a JCU representative traveled to the UW campus and conducted a mandatory orientation for students participating in the study abroad program that summer.

Beau was officially accepted to attend JCU in May 2016. He arrived in Rome on June 30, 2016. JCU faculty met the students at the airport in Rome, and they were transported to campus, and given another orientation session.

That night, Beau and his fellow students visited several bars. Beau and his roommate stayed out longer than the rest of the group. The two became separated, and Beau did not return to the JCU campus. Beau's body was eventually recovered from the Tiber River on July 4, 2016. An Italian man has been arrested and faces criminal prosecution in connection with Beau's death.

In August 2017, the Solomons filed suit in this court, alleging that JCU was negligent for failing to warn Beau of known dangers regarding criminal activity in the area surrounding its campus.

ANALYSIS

A. Personal jurisdiction

JCU contends that it is an Italian-based university that has only limited contact with Wisconsin, and thus the court should dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The Solomons bear the burden of demonstrating that the court has jurisdiction over JCU. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). The material facts are not in dispute, so an evidentiary hearing is unnecessary, which means that the Solomons can satisfy their burden by making a prima facie showing that the court has jurisdiction. *Tamburo v. Dworkin,* 601 F.3d 693, 700 (7th Cir. 2010).

Federal courts may exercise personal jurisdiction where a party would be amenable to suit under (1) the laws of the state where the federal court sits; and (2) where jurisdiction is

consistent with the requirements of due process. *KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). If a defendant has such systematic and continuous contact with the forum that it might be regarded as home there, the court might have general jurisdiction, which would mean that the defendant would be subject to personal jurisdiction in that court for any claim. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). More limited contacts might support specific jurisdiction, which would mean that a defendant would be subject to personal jurisdiction for claims that relate to its forum contacts. *Id*. Because the Solomons do not argue for general jurisdiction, the court focuses its analysis on whether the exercise of specific personal jurisdiction is authorized by both Wisconsin law and the constitution.

The applicable state law in Wisconsin is its long-arm statute, Wis. Stat. § 801.05, which is to be liberally construed in "favor of the exercise of personal jurisdiction." *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶¶ 16–17, 335 Wis. 2d 1, 13, 803 N.W.2d 623, 629. Both parties acknowledge this statute, but they address only the constitutional inquiry.

Regardless, the court concludes that the facts of this case fit within Wis. Stat. § 801.05(3), which authorizes personal jurisdiction "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." Here, the Solomons allege that Beau's injury arose out of JCU's negligence during his recruitment and orientation, both of which occurred in Wisconsin. Thus, the court finds that the statutory requirement is met and turns to the constitutional inquiry.

The Seventh Circuit has distilled the due process requirements for specific jurisdiction to a three-prong inquiry: "(1) the defendant must have purposely availed himself of the privilege of conducting business in the forum state or purposely directed his activities at the

4

state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). The parties dispute whether JCU's activities can satisfy each prong, and so the court will analyze each in turn.

### 1. Conduct purposefully directed at Wisconsin

Personal jurisdiction may not be "based on 'random, fortuitous, or attenuated contacts,'" but only "on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In other words, a defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011). Typically, this requires that an "activity or an occurrence" related to the underlying controversy takes place in the forum state. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

Here, three acts demonstrate purposeful availment of the privilege of doing business in Wisconsin. First, JCU signed two agreements with the UW that arranged for the marketing of JCU promotional materials in Wisconsin. Second, JCU sent an employee to Wisconsin, where he personally spoke with Beau and solicited his application to JCU. Third, JCU sent its employee to Wisconsin to conduct a mandatory orientation for students before they left for Rome.[1]

---

[1] In its reply brief in support of this motion, Dkt. 33, JCU argues for the first time that the Solomons have not shown that Beau actually attended this orientation. This dispute may prove relevant to the merits of this case, but it is irrelevant here because the personal jurisdiction analysis focuses on "actions by the defendant himself," not on the actions of the

JCU argues that these actions do not constitute purposeful availment because its contacts with Wisconsin are merely those typical of the contacts that any advanced educational institution would have with any state. In support of this argument, JCU cites two cases, neither of which is binding or persuasive.

In *Gehling v. St. George's School of Medicine, Ltd.*, the Third Circuit concluded that advertisements in national publications and the mailing of acceptance letters did not constitute a substantial enough connection with the forum state to support jurisdiction. 773 F.2d 539, 544 (3d Cir. 1985). But here, the recruitment of Beau was far more targeted than the national promotion and recruitment for a school at issue in *Gehling*. JCU specifically targeted Wisconsin as a market for its study abroad programs, as evidenced by its formal contracts with the UW and by JCU employees' person-to-person solicitation of students in Wisconsin. In *American University Systems, Inc. v. American University*, the court concluded the internet-based recruitment activities of an educational institution did not support "*general* personal jurisdiction." 858 F. Supp. 2d 705, 713 (N.D. Tex. 2012) (emphasis added). The court ultimately concluded that the defendant was not amenable to specific jurisdiction either, because the mere display of allegedly infringing trademarks in the forum did not cause any harm to the plaintiff, and was therefore insufficient to support jurisdiction over a declaratory judgment action. *Id*. at 716-17. Again, JCU's activities were targeted to Wisconsin, so *American University* is also uninformative.

The court finds that JCU purposefully directed its activities at Wisconsin.

---

plaintiff. *Burger King*, 471 U.S. at 475.

### 2. Injury relates to defendant's contacts with Wisconsin

The plaintiff must also show that the injury arises out of or relates to that conduct. *Felland*, 682 F.3d at 676. Whether there is a sufficient relationship between the injury and the forum contacts is not resolved by a "mechanical test," but by an inquiry that focuses on the "tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 430 (7th Cir. 2010) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007). In other words, the "precise causal relationship between contacts and claim" is not as important as that the "relationship be intimate enough" to make jurisdiction foreseeable. *Id.*

In this case, the Solomons' claimed injury and the defendant's forum-related actions are closely related, and the exercise of jurisdiction is foreseeable. JCU entered a contract with the UW to allow UW students to attend JCU's study abroad program in Rome. JCU sent an employee to Wisconsin with the goal to recruit students. That employee gave information about the JCU study abroad program and successfully recruited Beau. The next spring, another JCU employee traveled to Wisconsin to conduct an orientation session, again providing Beau with information about the program. The Solomons allege that JCU was negligent because, during both of these events, it failed to warn Beau of known dangers in the area surrounding the JCU campus, and he therefore traveled to Rome unaware of those dangers.

The Solomons' claims arise directly from JCU's forum contacts. The second prong is satisfied.

### 3. Traditional notions of fair play and substantial justice

The final prong of the specific jurisdiction inquiry considers whether the exercise of personal jurisdiction over an out-of-state defendant would offend traditional notions of fair

7

play and substantial justice. *Felland*, 682 F.3d at 677 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). On this prong, the burden is on the defendant to make a "compelling case" that these factors would "render jurisdiction unreasonable." *Id.* The court may consider the following factors: (1) "the burden on the defendant"; (2) "the forum state's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States [and nations] in furthering fundamental substantive social policies." *Id*.

The first factor, the burden on JCU, appears to tip somewhat against the exercise of jurisdiction. JCU argues that because some potential witnesses are Italian residents (including JCU's president, other unspecified JCU employees, and Italian officials involved in either the search for Beau or the subsequent criminal investigation) it would be burdensome to litigate this case here. And although JCU has not provided a specific witness list or explained how the aftermath of Beau's disappearance is relevant to the Solomons' negligent failure to warn claim, the court will accept that JCU will face some burden introducing testimony of Italian residents in a Wisconsin forum.

But this would usually be true of any non-resident defendant. And despite JCU's repeated argument that it is Italian-based university, it is organized as an American legal entity, and therefore doesn't face the "unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987). Moreover, JCU provides American addresses for 20 of the 27 members of its Board of Trustees. *See* Dkt. 32-3. So the court is not persuaded that it is fair to regard JCU as primarily an Italian entity. Regardless, even accepting that JCU is primarily an Italian-based

8

university, JCU has not shown that it faces such a heavy burden that exercising jurisdiction would be unreasonable.

The second factor, Wisconsin's interest in adjudicating the dispute, tips in favor of exercising jurisdiction. As discussed above, JCU targeted Wisconsin residents by recruiting students here. And a forum state has a "manifest interest in providing effective means of redress" when a nonresident defendant solicits the state's residents. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

The third factor, the Solomons' interests in obtaining effective and convenient relief, tips strongly in favor of exercising jurisdiction. Although Beau's death occurred in Rome, many of the key witnesses to the events surrounding his death are residents of Wisconsin and surrounding states. And just as JCU may have to spend considerable resources to litigate this dispute in Wisconsin, the Solomons would bear similar burdens if they had to litigate in Rome. Moreover, the Solomons, unlike JCU, would be forced to litigate in a foreign legal system.

The fourth factor, the international judicial system's interest in obtaining the most efficient resolution of controversies, is neutral. The parties dispute what law in controlling in this case, and neither has developed an argument on whether Italian or United States negligence law will apply. In either event, this court does not view negligence as a complex or unsettled area of law, and is unaware of any particular difficulty either this court or an Italian court would face in adjudicating the case.

The fifth factor, the shared interest of nations, is also neutral. Italian courts have an interest in the conduct of a university operating a campus in Italy, but this interest is matched by Wisconsin's interest in the conduct of a domestic corporation that solicits its citizens.

On balance, the only factor that weighs in favor of declining to exercise personal jurisdiction is the burden on JCU. But this burden is no greater than that faced by most out-of-state defendants, and is matched by the burden on the Solomons if they were required to litigate this case outside of this jurisdiction. The court concludes that exercising personal jurisdiction comports with the traditional notions of fair play and substantial justice.

Finally, the court also notes that throughout its brief, JCU relies heavily on *Bristol-Myers* for the proposition that the Supreme Court has recently circumscribed the concept of personal jurisdiction. However, *Bristol-Myers* was decided on "settled principles regarding specific jurisdiction" and therefore marked no change in the underlying law. 137 S. Ct. at 1781. The main point of the Supreme Court's opinion was to correct the "sliding scale approach" to specific jurisdiction used in California state courts. *Id*. Here, the Solomons are Wisconsin residents, their injury is related to JCU's conduct in Wisconsin, and they brought suit in this federal court. JCU's reliance on *Bristol-Myers* adds nothing to the application of the basic jurisdictional principles that are sufficient to decide this case.

In sum, the Solomons have shown that JCU purposefully directed its activities at Wisconsin, the claimed injury relates to those activities, and the exercise of jurisdiction is not unfair or unreasonable. All the requirements of the Due Process Clause are met.

B.  **Forum non conveniens**

JCU also contends that even if the court finds that it has personal jurisdiction over JCU, this case should be dismissed under the doctrine of forum non conveniens.

The common law doctrine of forum non conveniens allows a court to dismiss a suit if there are strong reasons for believing that it should be litigated in a foreign jurisdiction. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016). Due to the presumption in favor of allowing

a plaintiff his choice of courts, the doctrine should be invoked only when the "chosen forum would be more oppressive to the defendant than it would be convenient to the plaintiff." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015). Thus, the defendant bears a "heavy burden" to successfully oppose a plaintiff's chosen forum. *Deb*, 832 F.3d at 806.

A forum non conveniens inquiry has two steps. First, the court determines if there is an adequate alternative forum available to hear the case. If so, the court weighs various public and private interest factors to determine if dismissal is warranted. Here, the parties agree that Italy is an adequate alternative forum. Thus, the only question is whether public and private interest factors "strongly" favor dismissal. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The private interest factors include: "(1) relative ease of access to sources of proof; (2) availability of compulsory process and costs for attendance of witnesses; (3) possibility of view of premises, if appropriate; and (4) other practical issues, including ease of enforcement of any ultimate judgment." *Fischer,* 777 F.3d at 868.

The first two private interest factors, access to proof and witness availability, are intertwined in this case and are neutral. The critical issue in this case is whether JCU failed to adequately warn Beau of the dangers surrounding its campus. The key witnesses to what warnings JCU did or did not provide Beau will be Beau's fellow students and the JCU employees who conducted the orientation sessions. Beau's fellow students have been identified as residing in either Wisconsin or surrounding states. The court will assume, although it is not entirely clear, that the relevant JCU employees reside in Italy. Thus, no matter where the trial takes place, one of the parties will be inconvenienced by having to bear the potentially high cost of witness attendance.

11

The remaining factors tip against dismissal. This court can admit demonstrative evidence of the physical premises in Rome, and there is no indication that such practice would be inadequate here. And JCU does not argue that there would be any issue regarding the enforceability of a judgment if the case proceeds here.

The public interest factors include: (1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having a case heard in a venue familiar with the controlling law; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty. *Fischer*, 777 F.3d at 868. All of these factors tip against dismissal.

First, JCU does not provide any information to show that the Italian court docket is any less congested than this court's and would therefore provide a more efficient forum. Second, both Italian and Wisconsin courts have a significant localized interest in this case. Beau's death occurred in Italy, but he was recruited in Wisconsin, and the alleged wrongdoing occurred here. Third, it is unclear which law will ultimately control this case and the parties have not developed arguments in regards to this issue. Finally, a Wisconsin jury would be burdened by hearing this case, but this is not a forum unrelated to the controversy.

On balance, the private and public interest factors tip against dismissal, so JCU has not satisfied its heavy burden to show that a dismissal based on forum non conveniens is warranted.

## C. Transfer

JCU asks in the alternative that the court transfer the case to the United States District Court for the District of Delaware under 28 U.S.C. § 1404(a).

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." Transfer is appropriate when the moving party shows: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and witnesses and promote the interests of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). JCU concedes that, if this court has personal jurisdiction over it, venue is proper in Wisconsin, and the Solomons concede that venue would be proper in Delaware. And so the parties focus, as will the court, on the convenience of the parties and witnesses and the interests of justice.

The showing of inconvenience necessary to justify a transfer is less exacting than the showing required to obtain a dismissal on grounds of forum non conveniens. *In re Hudson*, 710 F.3d 716, 718 (7th Cir. 2013). But the moving party still must show that the transferee forum is "clearly more convenient." *Coffey*, 796 F.2d at 220. Factors to consider in a convenience analysis include "the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

Here, JCU concedes that the only connection that this case has to Delaware is that JCU is incorporated there. No material events occurred there, and it does not appear that any witnesses reside there. In contrast, Wisconsin is the home forum for plaintiffs, the site of Beau's recruitment, and the home to potential witnesses. Thus, JCU has failed to demonstrate that it would be clearly more convenient to the parties and witnesses to move this case to Delaware.

The interest of justice is a separate component of the § 1404(a) analysis, and it "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220. The relevant factors here include each court's familiarity with the relevant law, the desirability of resolving the controversy in each locale,

13

and the relationship of each community to the controversy. *Research Automation*, 626 F.3d at 978. Familiarity with the relevant law is neutral. For reasons stated above, it is unclear what law will be controlling in this case and even if Delaware law applies, this court is capable of applying another state's negligence law. As discussed above, the remaining factors both tip strongly against transfer.

ORDER

IT IS ORDERED that defendants John Cabot University and Ace American Insurance Company's motion to dismiss or transfer, Dkt. 23, is DENIED.

Entered May 31, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge